IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JASMINE LATRICE WILSON,        :
                               :
    Plaintiff,                 :
                               :
vs.                            :
                               :    CIVIL ACTION 12-0488-M
CAROLYN W. COLVIN,             :
Commission of Social Security,[1] :
                               :
    Defendant.                 :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 19).  Oral argument was waived in this action (Doc. 18).  Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

---

[1]Carolyn W. Colvin became the Commissioner of Social Security on February 14, 2013.  Pursuant to Fed.R.Civ.P. 25(d), Colvin is substituted for Michael J. Astrue as Defendant in this action.  No further action needs to be taken as a result of this substitution.  42 U.S.C. § 405(g).

1

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was nineteen years old, had completed a ninth-grade education (Tr. 49), and had no previous work experience (Tr. 50). In claiming benefits, Plaintiff alleges disability due to obesity, degenerative disc disease of the lumbar spine, sleep apnea, and major depression (Doc. 13 Fact Sheet).

The Plaintiff filed an application for SSI on July 16, 2009 (Tr. 140-42; *see also* Tr. 22). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Wilson was capable of performing less than a full range of light work, naming specific jobs which she could perform (Tr. 22-32). Plaintiff requested review of the hearing decision (Tr. 14-15) by the Appeals Council, but it was denied (Tr. 1-5).

2

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Wilson alleges that:  (1) The ALJ did not properly consider the opinions and conclusions of her treating physician; (2) the ALJ improperly discounted her testimony regarding her impairments; and (3) she is not capable of performing light work (Doc. 13).  Defendant has responded to—and denies—these claims (Doc. 14).  A summary of the relevant evidence of record follows.[2]

Records from the USA Department of Pediatrics, dating from January 6 through July 22, 2009, show that Wilson was treated, at various times, for heartburn, shortness of breath, a bladder infection, and dysuria (Tr. 333-50).  The notes indicate a focus on Plaintiff's eating habits and exercise regimen.

On October 1, 2009, Joanna Koulianaos, Ph.D., completed a Psychiatric Review Technique Form[3] in which she indicated that Plaintiff suffered from an adjustment disorder with mixed disturbance of emotions (Tr. 351-64).  This disorder caused mild limitations in Wilson's activities of daily living and in maintaining social functioning; she had moderate limitations in maintaining concentration, persistence, and pace.  On the same date, Koulianaos completed a Mental Residual Functional Capacity

---

[2] Wilson alleges an onset date of June 1, 2009 (Tr. 140), so the Court will not discuss the evidence that precedes that date by a good margin.

[3] The opinions in this form are based on the evidentiary record in existence at the time of its completion as Koulianaos did not examine Wilson.

Assessment indicating that Plaintiff was moderately limited in her ability to do the following: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; and respond appropriately to changes in the work setting (Tr. 365-68). Koulianaos expressed the opinion that Wilson would be able to pay attention for two-hour periods.

Records from AltaPointe Health Systems show that Plaintiff began engaging in individual therapy sessions on October 6, 2009 wherein she discussed her depression and home situation (Tr. 369-89). On January 25, 2010, Wilson was diagnosed to have Depression NOS, rule out Anxiety Disorder; it was noted that she took Zoloft[4] (Tr. 382). On March 16, Celexa[5] was prescribed instead of Zoloft (Tr. 378); Plaintiff admitted that she had put off her goal to get her GED so that she could undergo gastric bypass surgery (Tr. 377). On July 29, Wilson reported continued sleeplessness, depression, anxiety, and paranoia; Prozac[6] was prescribed (Tr. 373). On August 31, Plaintiff reported that she had stopped taking the Prozac because of her pregnancy; she was encouraged to begin taking it again to alleviate her continued

---

[4]**Error! Main Document Only.***Zoloft* is "indicated for the treatment of depression." *Physician's Desk Reference* 2229-34 (52nd ed. 1998).
[5]*Celexa* is used in treating depression. **Error! Main Document Only.***Physician's Desk Reference* 1161-66 (62nd ed. 2008).
[6]**Error! Main Document Only.***Prozac* is used for the treatment of depression. *Physician's Desk Reference* 859-60 (52nd ed. 1998).

symptomology (Tr. 371).

Plaintiff was seen at Pulmonary Associates for a work-up before—and follow-up after—her gastric bypass surgery (Tr. 526-41). In a letter dated February 9, 2010, Wilson was noted to still have some sleep apnea symptoms, though it was unnecessary for her to continue to use her CPAP; her EKG was normal and a chest x-ray demonstrated no marked abnormalities (Tr. 531). Plaintiff's weight was listed as 363; though morbidly obese, she was in no acute distress and her blood pressure was only slightly elevated (Tr. 529). On May 3, it was noted that Wilson had successfully undergone the gastric bypass surgery, though it was learned that she was one month pregnant at the time; her weight was down to 326 (Tr. 528). On August 2, Plaintiff reported shortness of breath on exertion, worsening sleep apnea, and weight loss in spite of her pregnancy; she was thought to be stable from a pulmonary standpoint (Tr. 527).

Records from University of South Alabama Health Services reveal that Wilson underwent a gastric bypass, performed by Dr. William Richards, because of her morbid obesity in March 2010 (*see generally* Tr. 394-423). On April 6, she was seen in the ER for nausea and vomiting; Wilson was admitted to the hospital and discharged two days later (Tr. 422). During that admission, as well as on another earlier occasion following her surgery, Plaintiff underwent an Esophagogastrojejunoscopy with endoscopic

5

dilation of the gastrojejunostomy (Tr. 420, 422).

On April 20, 2010, Plaintiff was seen at the Center for Women's Health High Risk OB for asthma, sleep apnea, acid reflux, and morbid obesity (Tr. 582; *see generally* Tr. 542-82). On June 24, Wilson complained of a one-sided headache, sinus congestion, and ear pain; Claritin was prescribed (Tr. 579). Vaginal bleeding was reported on July 21; there was some concern that Plaintiff was losing weight in spite of being pregnant (Tr. 577-78). On August 18, Wilson was noted to have gained some weight which was up to 318 pounds (Tr. 574-75). The Court notes that much of these records report the development of the baby; those records will not be summarized herein.

Records from Dr. Jean A. Sansaricq, dating from April 27 through November 2, 2010, disclose medical information relating to Wilson's treatment over the course of her pregnancy during which she suffered from asthma, sleep apnea, morbid obesity, acid reflux, acute nausea and vomiting, and weight loss (Tr. 492; *see generally* 414-515). A note on September 12 indicated that Plaintiff's morbid obesity, asthma, and depression were all relatively stable (Tr. 458).

Records from AltaPointe Health Systems show that Wilson, on September 28, 2010, reported taking only half of her prescribed medication (Tr. 522; *see generally* Tr. 519-25). Plaintiff further reported depression and anxiety at times along with some

paranoia; medication dosage was increased and Risperdal[7] was added to the regimen.  On October 26, Wilson reported good energy and concentration though she was tired due to her pregnancy (Tr. 520-21).  Plaintiff further reported being in compliance with the Risperdal prescription, but only taking the Prozac sometimes; she denied any medication side effects.  Insight and judgment were thought to be poor, though anxiety was only mild.

On November 3, 2010, Dr. William Richards completed a Physical Capacities Evaluation (hereinafter *PCE*) in which he indicated that Plaintiff was capable of sitting for three hours and standing or walking for one hour during an eight-hour workday (Tr. 517).  Richards also indicated that Wilson would never be able to bend, stoop, or work around hazardous machinery, rarely use arm or leg controls, climb, reach, or operate motor vehicles, and could only occasionally perform gross and fine manipulation.  On that same date, Richards completed a pain form stating that Wilson's pain would distract her from adequately performing daily activities and work and that physical activity would greatly increase her pain so as to distract her from what she was doing and might even cause abandonment of the task (Tr. 518).  The doctor further indicated

---

[7] **Error! Main Document Only.***Risperdal* is used "for the management of the manifestations of psychotic disorders."  *Physician's Desk Reference* 1310-13 (52nd ed. 1998).

7

that prescribed medication would cause some limitations but not to such a degree as to create serious problems.

On January 13, 2011, Plaintiff underwent a consultative evaluation by Psychologist Lucile T. Williams who noted that Wilson's grooming and personal hygiene were fair and her mood was oppositional and mildly depressed (Tr. 587-89).  Thought processes were grossly intact; there were no loose associations, tangential, or circumstantial thinking.  Insight, understanding, and judgment were poor; intelligence was estimated to be borderline to low average.  Williams's impression was Nocturnal Enuresis, Dysthymic Disorder, Oppositional Defiant Disorder, and Panic Disorder without Agoraphobia; she thought that Wilson would have a favorable response to treatment, including psychotherapy, within six-to-twelve months.  The Psychologist expressed the opinion that Plaintiff was not motivated to do her best during the interview as many of her statements appeared unreliable.  Williams also completed a Mental Medical Source Statement in which she indicated that Wilson was moderately limited in the following:  her ability to understand, remember, and carry out complex instructions; make judgments on complex work-related decisions; interact appropriately with the public, supervisors, and co-workers; and respond appropriately to usual work situations and to changes in a routine work setting (Tr. 583-84).  The Psychologist added the notation that "Ms. Wilson's

8

ability to interact with others is not based solely on her impairments.  However, it is my belief she has the ability to interact appropriately but chooses not to due to her oppositional attitude and secondary gain" (Tr. 584).

On February 28, 2011, Orthopedic Surgeon Andre J. Fontana examined Plaintiff who weighed 384 pounds (Tr. 592-93).  Range of motion (hereinafter *ROM*) in the cervical spine was as follows:  flexion 40°, extension 10°, rotation 35° left and right, lateral flexion 15° left and right; sensory was good and motor was 5/5.  Toe-heel gait was fair; motor was 5/5 in the lower extremities.  Lumbar spine ROM was as follows:  flexion 30°, extension 10°, and lateral flexion 15° left and right; straight-leg raise was 90° in the sitting position and 70° in the supine.  ROM in the hips was good.  Fontana's impression was degenerative disk disease of the lumbar spine.  His conclusions were that Wilson "should not do any lifting over 25 pounds with infrequent bending.  Because of her weight, [he did] not feel that she [was] capable of doing any stooping, kneeling, or crawling and should not be doing any climbing" (Tr. 593).  Fontana also completed a PCE in which he indicated that Wilson was capable of standing one hour, walking one hour, and sitting eight hours at a time and standing four hours, walking four hours, and sitting eight hours during an eight-hour day (Tr. 591).  Plaintiff would be able to lift and carry twenty pounds

9

on an occasional basis, but never more than that; she would be able to use her hands and feet in repetitive actions.  Wilson would be able to frequently reach, but could never bend, squat, crawl, or climb; she was totally restricted from working at unprotected heights and being around moving machinery.

At the evidentiary hearing, Wilson testified that she was nineteen years old, weighed 330 pounds, and only finished the ninth grade (Tr. 48-49).  Plaintiff stated that she was unable to work because she had low self esteem about her size and she did not feel like she could do anything; she stated that she was not working because of her size, weight, and depression, and because she did not get along with people and had no people skills (Tr. 51).  Wilson stated that she could walk for thirty minutes and stand for twenty minutes, but could sit for long periods as long as she could change to different positions; Plaintiff could not bend over and could only lift a gallon of milk (Tr. 53-54).  She cannot climb stairs, stoop, squat, or perform housework, but can take care of her personal needs (Tr. 55-56).  She takes care of her baby, though her mother does most of it; she does nothing but sit and watch television all day (Tr. 56).  Plaintiff testified that she needed gastric bypass surgery because of the strain her weight put on her heart; after the surgery, she has not been able to keep her food down (Tr. 57).  Her energy level has not improved, either; she feels weak

and tired and has stated taking B-12 shots (Tr. 57).  Wilson has chest pains everyday that get worse when she does anything; her heart will flutter as well (Tr. 58-59).  Plaintiff has back pain all the time that gets worse after sitting a while or walking (Tr. 59).  Wilson also has depression, anxiety, and visual hallucinations (Tr. 59-60).  She does not get along with people and does not like to be around them; she cannot remember things (Tr. 60).  Plaintiff takes medication because she does not sleep well, but it does not really help (Tr. 61).

A Vocational Expert (hereinafter *VE*) testified that a hypothetical individual of Plaintiff's age and education that could lift twenty pounds occasionally and ten pounds frequently with no limits on standing, walking, or sitting, so long as she had the ability to shift positions while sitting at two-hour intervals, who was restricted to simple, routine, repetitive tasks and only occasional contact with the general public, could perform the following jobs:  sewing machine operator, housekeeper/cleaner, and production assembler (Tr. 63-65).

In the ALJ's determination, she summarized the medical evidence and determined that Plaintiff had the following residual functional capacity (hereinafter *RFC*):

> The claimant can lift 20 pounds occasionally and 10 pounds frequently.  She can sit for a total of 8-hours and stand/walk for a total of 6-hours during an 8-hour workday, and

11

> would need the ability to alter body
> position at 2-hour intervals for relief of
> pain.  She would also be limited to simple,
> routine, repetitive tasks to accommodate any
> residual psychiatric symptoms; and only
> [sic] occasional contact with the general
> public.

(Tr. 26).  The ALJ went on to find that Plaintiff's testimony about her impairments and limitations was not credible to the extent that she alleged (Tr. 28, 30).  The ALJ gave little weight to the conclusions of Drs. Fontana and Richards (Tr. 28-29); the ALJ gave significant weight to the conclusions of Psychologist Williams (Tr. 30).  This concludes the Court's summary of the medical evidence.

Plaintiff's first claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of Plaintiff's physicians.  More specifically, Wilson asserts that the ALJ did not properly consider the conclusions of Dr. William Richards (Doc. 13, pp. 6-9).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[8] *see*

---

[8]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

12

*also* 20 C.F.R. § 404.1527 (2012).

The ALJ gave Dr. Richards' conclusion of debilitating pain and limitations of abilities "little weight," stating the following:

> [I]t is inconsistent with his own treatment of the claimant and the objective findings of record. From December 2009 to July 2010, Dr. Richards treated the claimant for complaints of vomiting/nausea, morbid obesity, and status post gastric bypass surgery. Besides a general complaint of hernias in May 2010, there is no other indication of pain reported (including severe back) or treatment for the same. On physical examination in July 2010, no abnormal musculoskeletal systems were noted, and Dr. Richards observed the claimant had "normal" gait & station. The claimant's other physical examinations of record also indicate pain of 0 out of 10, and normal extremity and musculoskeletal/back examinations. There is simply no objective medical evidence of record to support Dr. Richards' opinions.

(Tr. 29) (citations omitted).

The Court initially notes that Dr. Richards was the surgeon who performed the gastric bypass surgery on Wilson in March 2010 (*see generally* Tr. 394-423). The Court further notes that the only medical evidence supplied by Richards that Plaintiff specifically references in her argument is the PCE and pain form completed on November 3, 2010 (Tr. 517-18). This evidence was generated approximately eight months after her surgery though

there is very little evidence that Richards saw her again before generating these reports.  In any event, the evidence provided by Richards fails to support the extreme limitations found in his PCE and pain form.

Plaintiff has also challenged the ALJ's rejection of Dr. Fontana's conclusions regarding her ability to perform certain activities (Doc. 13, pp. 9, 12-13).  The ALJ's findings with regard to this issue are as follows:

> The undersigned has given Dr. Fontana's opinion some weight as he is a specialist in the field of orthopedics, and to the extent it is consistent with the above residual functional capacity.  His opinion suggests that the claimant is able to perform some work despite her impairments; however, little weight is given to his opinion that the claimant is incapable of all stooping, kneeling, crawling or climbing, because it is not consistent with his own examination findings and the objective findings of record.  On examination, the claimant demonstrated good sensory, motor strength, and range of motion of the hips. Additionally, the claimant's physical examination findings, throughout the record are mostly normal and do not suggest that the claimant is incapable of all stooping, kneeling, crawling or climbing.

(Tr. 28).  The Court finds support for the ALJ's conclusions, noting that Dr. Fontana is apparently the first doctor of record to diagnose degenerative disk disease, which he did without the benefit of x-rays or other objective measure.  The medical

14

evidence does not support the limitations suggested by Dr. Fontana.

In finding support for the ALJ's rejection of Dr. Richards's and Dr. Fontana's conclusions, the Court is not unmindful of Wilson's string citation from the "medical record as a whole [that] supports the opinions of Dr. Richards" (Doc. 13, p. 9). The Court has reviewed that evidence and fails to find objective evidence to support the conclusions asserted by Drs. Richards and Fontana. This claim is without merit.

Wilson next claims that the ALJ improperly discounted her testimony regarding her impairments. More specifically, Plaintiff states that the ALJ did not properly consider her daily activities and improperly found that she had not sought out treatment for her impairments (Doc. 13, pp. 16-20).

The standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). The Eleventh Circuit Court of Appeals has also held that the determination of whether

15

objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence."  *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2012).

In discussing Wilson's first claim, the Court specifically found that there was no objective medical evidence in the record to support the limitations found by Drs. Richards or Fontana. Likewise, there is no objective evidence to support the extreme limitations Plaintiff states that she endures.  As noted above,

16

the regulations state that subjective testimony alone will not support a claim for disability.

Finally, Wilson asserts that she is not capable of performing light work. She goes on to argue that the ALJ's RFC is not supported by any treating or examining physician (Doc. 13, pp. 9-16).

The Court first notes that the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546 (2012). The Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination. 20 C.F.R. § 416.945(a)(3).

Light work has been defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (2012).  The Court notes that the ALJ determined that Plaintiff's RFC was for less than a full range of light work (Tr. 26).

As found earlier, Dr. Richards' conclusions regarding Plaintiff's physical impairments were not supported by the objective medical evidence of record.  Wilson has also questioned the ALJ's discounting of Dr. Fontana's conclusions regarding her abilities, but the Court found that they, too, were properly discredited as unsupported by objective evidence. As Plaintiff has failed to demonstrate objective evidence that she is unable to work, the Court cannot find that the ALJ's conclusion is without substantial support.

Plaintiff has raised three different claims in bringing this action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 7th day of March, 2013.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE